# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JACK HOWELLS, *et al*.,

    Plaintiffs,

v.

GENERAL ELECTRIC COMPANY,

    Defendant.

Case No. 2:10-cv-00703-LDG (VCF)

**ORDER**

    Plaintiffs Jack and Virginia Howells allege, in their amended complaint (#13), that a malfunctioning microwave oven manufactured and sold by defendant General Electric Company caused a fire in the kitchen of their home. Plaintiff AAA Nevada Fire and Casualty Insurance Company alleges that it paid the Howells for the damages to their home. The plaintiffs allege a single strict product liability claim against General Electric.

    General Electric now moves for summary judgment (#31). General Electric asserts that the plaintiffs failed to designate any expert witness to support the strict product liability claim and otherwise lack sufficient evidence to raise a genuine issue of fact that the microwave oven was defective and caused the fire. The plaintiffs oppose (#33), relying solely on the testimony of the Howells and a single statement in the fire department's

incident report.[1] Having considered the arguments of the parties and the competent evidence in the record, the Court finds that summary judgment is appropriate in favor of General Electric.

Factual Background

In her deposition, Virginia testified she warmed a burger and then a cup of coffee in the microwave, and then went into the sunroom to eat. Initially, she testified that "[i]n a couple of minutes I could smell smoke." Promptly after that, however, she testified that before sitting down she "heard a crackling sound" that she knew was coming from the kitchen. The microwave was not running when she heard the crackling sound. Virginia further testified that when she went back to the kitchen she "saw flames inside the microwave" and called her husband.

In his deposition, Jack testified that he heard his wife call out, "There's a fire in the microwave." Jack then got out of bed, went to the hallway, and looked into (but did not enter) the kitchen. From the hallway, he saw "[f]lames inside the microwave."

In the fire department's incident report, one of the fire fighters reported in the narrative text that "the attic space was opened up and fire was found in the attic and wall area just above and behind the Microwave." The same incident report identified the Area of Origin of the fire as the "Cooking area, kitchen," but identified as undetermined the "Heat Source," the "Item First Ignited," and the "Type of Material." The incident report further identified the "Cause of Ignition" to be "Failure of equipment or heat source," but that the "Contribution to Ignition" was undetermined.

Analysis

---

[1] The plaintiffs included, within their opposition, statements from a report prepared by an engineer who inspected the microwave oven. The Court, however, precluded the plaintiffs from identifying the engineer as an expert witness and from using his report's information as evidence.

While plaintiffs argue that the testimony of the Howells is clear and that the fire started in the microwave, their deposition testimony does not support this conclusion. Both Howells testified that they were not in the kitchen when the fire started. Thus neither could (and neither did) testify that the fire started in the microwave. At most, both testified that they witnessed seeing the fire in the microwave.

The plaintiffs note Virginia's testimony that the microwave was not running and there was nothing in the microwave. Absent from the testimony of the Howells, however, is any evidence that the microwave was defective or that the microwave caused the fire. The deficiency of the Howells' testimony is emphasized by guidelines established by the National Fire Protection Association for Fire and Explosion Investigations (NFPA 921), and the report of General Electric's expert witness, Ron Liem. As stated by Liem in his report:

> The process includes the collection of all data and evidence from the fire scene, analysis of all the data, developing a hypothesis of the failure or action that caused the fire, and then testing the hypothesis against all the data. This investigative method is carried out iteratively until the failure mechanism is proven and the proposed scenario fits all the facts of the data (NFPA 921 §17.2.1.2). If there are missing data or inconsistent facts that cannot be explained by the selected final hypothesis, the conclusion of the cause of the fire must be "undetermined" (NFPA §19.2.1.4).

Liem further quotes:

> The determination that an appliance is an ignition source in a fire is not simply related to its being at the origin. Prior to an appliance being identified as the ignition source, the method or mode of failure should be established.

NFPA 921 §18.2.6. Section 18.3.4 goes on to note:

> Once the area and possibly the point of origin are identified, the investigator should identify all heat-producing devices, appliances, or equipment that could have caused the ignition.

As detailed in Liem's report, he conducted an examination of the microwave oven, which examination "did not reveal any defect–manufacturing or otherwise–to support a conclusion of a fire cause in the subject microwave oven." Neither Liem nor General Electric was afforded an opportunity to independently examine the fire scene, but was able to review

3

only a "coarse photograph taken by [the] restoration contractor–an entity not in the business of fire investigation." Liem indicated that while these photographs showed a coarse depiction of fire in the kitchen, they were not of sufficient quality for fire analysis. Liem noted the lack of any photographs documenting the stove that was immediately below the microwave, and further noted the lack of the stove itself. Liem noted the lack of the cabinet that had been above the microwave, or any photographs of the cabinet, and noted that the "fire damage patterns on this cabinet would have provided a more complete picture of the fire, how it started, and how it spread." After noting other evidence of the fire that was not preserved, Liem noted that neither he nor the plaintiffs could "state with any confidence that the fire started in the microwave oven as opposed to starting at the stove when they had not even seen or examined the stove. Consequently, the stove cannot be ruled out as the origin and cause of the fire." Liem further stated, "the only conclusion of the fire's origin is 'Undetermined.'"

The Howells have not designated any expert or produced an expert report identifying the cause of the fire in the Howells' home. Also lacking from the record is any expert witness or report proffered by the Howells that suggests the microwave suffered from a defect in either design or manufacture.

In sum, the claim brought by the Howells rests upon their allegation that the fire in their kitchen was caused by a malfunctioning microwave oven manufactured and sold by defendant General Electric Company. The evidence before the Court, however, permits only an inference that a fire originated in the cooking area of the Howells' kitchen, which the Howells then witnessed burning in their microwave. The record lacks any evidence that the microwave was defective, and the only expert presented to the Court reported that there is no evidence to support a conclusion of a product defect in the microwave. As indicated by the fire department in its report, the only conclusion that can be inferred from

the evidence, or the lack thereof, is that the source of ignition of the fire and the item first ignited are undetermined.

Accordingly,

THE COURT **ORDERS** that Defendant General Electric Company's Motion for Summary Judgment (#31) is GRANTED.

DATED this ___30___ day of January, 2013.

_____
Lloyd D. George
United States District Judge